UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARL ALEXANDER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:07CV02103 ERW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court upon Petitioner Carl Alexander's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1]. The Government filed its response to Petitioner's request on May 2, 2008.

**I. BACKGROUND**

On December 8, 2004, Petitioner Carl Alexander ("Petitioner") was convicted of conspiracy to distribute cocaine in an amount in excess of 5 kilograms (Count One), engaging in a monetary transaction involving criminally derived property (Count Four), and conspiracy to commit wire fraud (Count Five). On April 8, 2005, Petitioner was sentenced to 240 months imprisonment, consisting of 240 months on Count One, 120 months on Count Four, and 60 months on Count Five, with all terms running concurrently. Additionally, Petitioner was sentenced to supervised release for a term of five years, consisting of five years on Count One and two years on each of Counts Four and Five, with all terms running concurrently. Following his sentencing, Petitioner filed a notice of appeal, but the Eighth Circuit denied his appeal on June 15,

2006. Petitioner also filed three separate motions for new trial, all based on "newly discovered evidence." Each of these motions was denied by this Court.

On December 21, 2007, Petitioner filed the pending Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. As grounds for relief, he asserts that his trial counsel was ineffective, that the Government presented perjured testimony, and that the indictment in the case was invalid. For the reasons set forth below, the Court concludes that all of the above grounds are without merit. Accordingly, the Court will dismiss Petitioner's Motion Under 28 U.S.C. § 2255.

## II. STANDARD OF REVIEW: RELIEF UNDER 28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Nonconstitutional claims based on a federal statute or rule, rather than on a specific constitutional guarantee, "can be raised on collateral review only if the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 354 (1994) (internal quotations omitted).

Section 2255 claims may also be limited by procedural default. "A petitioner simply cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). Moreover, even constitutional or jurisdictional claims not raised on direct appeal are procedurally defaulted unless the petitioner can demonstrate either cause for the default and actual

2

prejudice, or actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001)). An exception to this general prohibition exists only where the alleged error constitutes a "fundamental defect[] that inherently result[s] in a complete miscarriage of justice." *United States v. Manko*, 772 F.2d 481, 482 (8th Cir. 1985).

**III. DISCUSSION**

**A. RIGHT TO EVIDENTIARY HEARING**

The Court must hold an evidentiary hearing to consider claims in a § 2255 motion "'[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (quoting 28 U.S.C. § 2255). Thus, a petitioner is entitled to an evidentiary hearing "'when the facts alleged, if true, would entitle [the petitioner] to relief.'" *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). The Court may dismiss a claim "without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Shaw*, 24 F.3d at 1043. The Court notes that Petitioner's claims can be conclusively determined based upon the Petition, and the files and records of the case. Therefore, no evidentiary hearing will be held. *See Shaw*, 24 F.3d at 1043.

**B. INEFFECTIVE ASSISTANCE OF COUNSEL**

A claim alleging a violation of the Sixth Amendment right to effective assistance of counsel may be raised for the first time in a § 2255 motion, regardless of whether the claim could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This

3

exception to the general procedural default rule exists to prevent movants from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Furthermore, a movant's attorney may serve as counsel both at the trial and appellate levels of the case, and it is unlikely that the attorney would claim his own ineffective assistance on appeal. 3 Charles Alan Wright, Nancy J. King & Susan R. Klein, *Federal Practice and Procedure* § 594.1, at 710 (3d ed. 2004). Demonstrating ineffective assistance of counsel will normally satisfy the cause for default and actual prejudice requirements necessary to raise a constitutional issue for the first time in a § 2255 motion. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Establishing ineffective assistance of counsel, however, is "a heavy burden." *Id.*

In *Strickland v. Washington*, the Supreme Court held that a showing of ineffective assistance of counsel requires a petitioner to demonstrate: (1) that counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and (2) that counsel's "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995). To prove the first prong of the *Strickland* ineffective assistance of counsel test, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. When evaluating counsel's performance, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Even if sufficient proof exists with respect to the first prong, relief may only be obtained if a petitioner also proves that the deficient performance prejudiced the case (the second prong). *Id.* at 697. The Court may address the two

*Strickland* prongs in any order, and if a petitioner fails to make a sufficient showing of one prong, the Court need not address the other prong. *See id.* at 697; *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000) ("If we can answer 'no' to either question, then we need not address the other part of the test.").

Through his motion, Petitioner appears to raise the following grounds for relief based upon the ineffective assistance of counsel: 1) failure to investigate the two alleged drug stops; 2) failure to investigate the alleged DEA stop; 3) failure to introduce exhonerating business records; 4) failure to interview and call key and important witnesses; and 5) failure to cross-examine Special Agent Lopez. The Court will address each of Petitioner's arguments, in turn.

### 1. *Failure to Investigate Two Alleged Drug Stops*

Petitioner first claims that his trial counsel, Mr. Steven V. Stenger, "failed to investigate two alleged drug trips [P]etitioner was said to have taken on a commercial airline (TWA) to show [P]etitioner never traveled on either trip, or at best, show what dates the two alleged trips could have occurred on." (Pet.'s Mtn., doc. #1, p.23). The Government provided a sworn affidavit from Mr. Stenger, in which he states that he did not have enough details to further investigate the trips. Specifically, Mr. Stenger states that during discovery, he received no details regarding the timeframe of the trips in question or the commercial airline involved, although he did seek the information. (Stenger Affidavit, doc. #6-5, p.2). Without knowing specific dates[1] and airlines, it would be extremely difficult, if not impossible, to obtain information relevant to Petitioner's case. Moreover, Petitioner asserts that he was not on the trips, so Mr. Stenger would have been

---

[1] In his Reply Response, Petitioner asserts that Mr. Stenger was aware that the trips were allegedly made in April, May, June, or July of 1997. Even if Mr. Stenger was aware of this information, the relevant time period is still too broad to engage in an effective investigation.

5

looking for the lack of travel information with respect to Petitioner, rather than attempting to locate his prior travel documents. Thus, it cannot be said that Mr. Stenger acted unreasonably or deficiently.

Additionally, Petitioner cannot prove that Mr. Stenger's decision not to investigate the two alleged drug trips prejudiced his case. Petitioner claims that an investigation would have revealed that he was not on the trip. However, it was established at trial that the participants in the conspiracy often traveled under assumed names. Thus, even if Mr. Stenger would have been able to prove that there was no record that a person named Carl Alexander traveled during the relevant time period, it would not preclude the possibility that Petitioner actually went on the trips. Thus, Petitioner is unable to prove either prong of the *Strickland* test and his ineffective assistance of counsel claim for failure to investigate the two alleged drug stops must fail.

### 2. *Failure to Investigate Alleged DEA Stop*

Petitioner also claims that Mr. Stenger provided ineffective assistance of counsel because he "failed to investigate the alleged DEA stop involving [P]etitioner, where $10,000 in US currency was allegedly found and was said to be [P]etitioner's buy money for ½ kilogram of cocaine." (Pet.'s Mtn., doc. #1, p.24). Mr. Stenger stated in his affidavit that he again had very little information with respect to the alleged DEA stop, making it difficult to investigate. He requested any and all law enforcement reports related to the alleged stop, but no such reports were available. Because he did not know the date, place or time of the alleged DEA stop, it is difficult to imagine how else Mr. Stenger could reasonably have investigated the alleged incident. Again, even if he had been able to narrow down the searchable records to a manageable amount, because Petitioner asserts that the alleged stop did not exist, Mr. Stenger would not have been

6

searching for a report about the incident. Rather, he would be attempting to complete the difficult task of demonstrating that no such report exists. Moreover, Mr. Stenger stated in his affidavit that "[a]s part of defense strategy, [he] did not wish to find a report memorializing the alleged stop." (Stenger Affidavit, doc. #6-5, p.3). When an attorney's trial strategy is at issue, the Court presumes that effective assistance was provided "and will not second-guess strategic decisions or exploit the benefits of hindsight." *Payne v. United States*, 78 F.3d 343, 345 (8th Cir. 1996). Thus, the Court finds that Mr. Stenger acted reasonably and that his performance was not deficient.

Furthermore, Petitioner cannot prove that Mr. Stenger's decision not to investigate the alleged DEA stop prejudiced his case in any way. As discussed in the preceding section, it was established at trial that the participants in the conspiracy often traveled under assumed names. Even if Mr. Stenger were able to demonstrate that there were no records supporting the alleged DEA stop of a person by the name of Carl Alexander, it would not necessarily mean that Petitioner was not stopped by the DEA. Additionally, it is not clear that a report would have even been generated to document the alleged DEA stop. As set forth by the Government, "[t]he testimony indicated that Petitioner presented records from his business to the investigating officers to account for his possession of $10,000 in currency and that the officers allowed him to continue on his journey." (Govt.'s Response, doc. #6, p.13). Because Petitioner was not arrested or punished in any way as a result of this alleged stop, it is possible that a report would not exist even though the stop occurred. Thus, Petitioner is unable to prove either prong of the two-prong *Strickland* test and, thus, his ineffective assistance of counsel claim for failure to investigate the alleged DEA stop must fail.

### 3.     *Failure to Introduce Business Records*

In addition, Petitioner claims that Mr. Stenger "failed to investigate and present important business records and documents, including dated photos, that were given to him before trial by Tonya Alexander, that would have proved [P]etitioner's whereabouts and innocence." (Pet.'s Mtn., doc. #1, p.25). Petitioner includes the business records with his Motion that he claims are exonerating. The records at issue are receipts from Petitioner's business, Formula 1, and other businesses that apparently deal with Formula 1. The provided receipts are marked with dates, either typed or in handwriting, and appear to cover a large portion of the time period during which Petitioner supposedly traveled on drug trips. He argues that these records demonstrate that he was not, and could not be, away from his business for the amount of time necessary to go on a drug trip. Mr. Stenger, however, asserts that although he did not receive the documents at issue until the night before trial began, he was able to thoroughly review them and determined that they were in no way relevant to Petitioner's case. Further, Mr. Stenger noted that Petitioner had decided not to testify at trial and introducing the business records would have required Petitioner to authenticate them, thereby opening himself up to cross-examination.

The Court finds that Mr. Stenger's performance with respect to the business records at issue was not deficient. Petitioner had already made the decision not to testify at his trial, presumably because of his criminal history, including a conviction for identity theft. Introducing Petitioner's business records would have required his testimony, making him subject to cross-examination on his prior convictions and other damaging information. Mr. Stenger's decision not to introduce the documents in order to protect Petitioner from testifying can clearly be classified

8

as trial strategy. As set forth above, when counsel's trial strategy is at issue, effective assistance of counsel is presumed. *See Payne*, 78 F.3d at 345.

Furthermore, Petitioner cannot prove that his case was prejudiced as a result of Mr. Stenger's decision not to introduce the business records. Petitioner is adamant in his belief that these records would exonerate him. However, it is not clear that the business records would have changed the outcome of the case in any way. The records don't account for every day of the relevant time period and they are easily manipulable. Thus, Petitioner is unable to prove either prong of the *Strickland* test and his ineffective assistance of counsel claim for failure to introduce business records must fail.

### 4. *Failure to Interview and Call Witnesses*

Petitioner asserts that Mr. Stenger "failed to interview and call key and important witnesses who would have given critical testimony, and testified to the authenticity of the records, documents, and photos." (Pet.'s Mtn., doc. #1, p.27). Petitioner specifically mentions thirteen people that he claims he identified but Mr. Stenger never contacted, all of whom appear to be business contacts and some of whom are only identified by a first name.[2] Mr. Stenger stated in his affidavit that he had requested that Petitioner provide him with names of witnesses available to assist Petitioner several times before actually receiving them. Mr. Stenger went on to state that

---

[2]Specifically, Petitioner states: "Defense counsel was given a list of witnesses months before trial that included Sara Shandy, representative of CPS, Jim Belote, owner of Jim Belote's ABC auto etc., LaValle Warren, representative of KXOK 97.1 radio station, Willie Collin, owner of Collin's Auto Repair, Sandy, representative of Lenda Products, Irlene, representative of Autco Distribution, Kenny Young, frequent customer of Formula 1, David Stacker, frequent customer of Formula 1, Ronnie Trotter, frequent customer of Formula 1, Keva Shelton, secretary of Formula 1, Alvin Adams, employee of Formula 1, and Mark Harmon, owner of Photo World, and Branko Puhar JR., America's Center Box Office Manager." (Pet.'s Mtn., doc. #1, p.27).

upon receiving the names, he contacted each of the witnesses listed and determined that none of them had any information relevant to the pending criminal charges or the trial of this matter. He also determined that several witnesses had criminal records, which would affect their credibility.

"The decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (quoting *United States v. Davidson*, 122 F.3d 531, 538 (8th Cir. 1997); *Bowman v. Gammon*, 85 F.3d 1339, 1345 (8th Cir. 1996)). This Court finds that Mr. Stenger's decision not to call any of the witnesses identified by Petitioner "do[es] not fall outside this wide perimeter of protection." *Id.* The witnesses identified by Petitioner may have been able to provide some information regarding Petitioner's business, but this information would have been of little relevance to the criminal charges pending against Petitioner. Moreover, some of the witnesses apparently had criminal history, which would have greatly affected their credibility. *See id.* at 489 ("there is considerable risk inherent in calling any witness because if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences against the party who called him or her"). Thus, it was not objectively unreasonable for Mr. Stenger to decide not to call the witnesses identified by Petitioner.

In direct contradiction to the affidavit provided by Mr. Stenger, Petitioner asserts that Mr. Stenger did not even interview the identified witnesses. Even if this were true, the Court's conclusion regarding Petitioner's ineffective assistance of counsel claim would remain the same. The Eighth Circuit has "stated that failing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel.'" *Kramer v. Kemna*, 21 F.3d 305, 309 (8th Cir. 1994) (citing *Kenley v. Armontrout*, 937 F.2d 1298 (8th Cir. 1991)). "Such a failure is not, however, a conclusive indication of ineffective

10

assistance of counsel," rather Petitioner must still "'make a substantial showing that, but for counsel's failure to interview . . . the witnesses in question, there is a reasonable probability that the result of his trial would have been different." *Id.* Petitioner is unable to meet this burden. Petitioner has provided evidence to the Court as to what two of the identified witnesses (Sara Shandy and Jim Belote) would have allegedly said, had they been called to testify. Both of these witnesses signed an affidavit stating that they would have "corroborated the business records" with respect to their dealings with Petitioner. This testimony alone would not be sufficient to change the outcome of the trial because Ms. Shandy and Mr. Belote could only account for a portion of the business records. Even if their testimony were sufficient to establish Petitioner's presence in St. Louis on the days for which a business record from their company exists, a conclusion this Court does not make, there would still be many days during the months of June and July 1997 for which no corroborating testimony would be presented. (Pet.'s Reply, doc. #10, Ex. 1). For those days, the jury would have to rely merely on the business records provided by Petitioner, which this Court has already determined would not have changed the outcome of trial. *See supra* Section III(B)(3). As to the remaining identified witnesses for whom affidavits were not provided, because there is no evidence to demonstrate what their testimony would have been, the Court cannot conclude that their testimony would have changed the outcome of the case. *See Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (finding that a petitioner's failure to offer an affidavit or testimony of the witness at issue leaves the court to speculate whether the witness might have testified that petitioner was innocent, which "is simply inadequate to 'undermine confidence in the outcome'" (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Thus, Petitioner's ineffective assistance of counsel claim for failure to interview and call witnesses must fail.

### 5. *Failure to Cross-Examine Special Agent Lopez*

Finally, Petitioner asserts that Mr. Stenger "was ineffective for failing to cross-examine Agent Lopez, the FBI Agent who testified before the Grand Jury concerning Petitioner's alleged involvement, to show Jason Miller lied to him about Petitioner's alleged involvement, and in turn, he inadvertently lied to the Grand Jury." (Pet.'s Mtn., doc. #1, p.46). Mr. Stenger stated in his affidavit that he did not call Special Agent Lopez as a witness at trial because Special Agent Lopez's testimony would have been against the interests of Petitioner.

"Direct- and cross-examination techniques are matters of trial strategy left to the discretion of counsel." *Barnes v. United States*, 859 F.2d 607, 608 (8th Cir. 1988); *see also United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001) ("We generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."). Mr. Stenger made a reasonable decision not to call Special Agent Lopez as a witness or to cross-examine him about the inconsistencies in Jason Miller's testimony. Mr. Miller had made incriminating statements about Petitioner, but then changed his testimony at trial. Had Mr. Stenger questioned Special Agent Lopez about Mr. Miller's original statements, the jury would have received incriminating information about Petitioner that they otherwise would not have heard, which obviously would not be in Petitioner's best interests. Petitioner has failed to demonstrate that Mr. Stenger's decision not to question Special Agent Lopez was anything but sound trial strategy. Additionally, even if Mr. Stenger should have questioned Special Agent Lopez about Mr. Miller's inconsistent testimony, it is unlikely that his failure to do so prejudiced

12

the defense in any way. *See Reed v. United States*, 106 F.3d 231, 236 (8th Cir. 1997). Thus, this Court will deny Petitioner's ineffective assistance of counsel claim for failure to cross-examine Special Agent Lopez.

### C.  GOVERNMENT PRESENTATION OF PERJURED TESTIMONY

In addition to his ineffective assistance of counsel claims, Petitioner also asserts that he is entitled to relief under 28 U.S.C. § 2255 because the Government presented perjured testimony against him at trial. Petitioner's claim is essentially based on his argument that his business records establish that he could not have participated in the drug trips. He argues that because he couldn't have gone on the trips, it is clear that the Government's witnesses (Edward Anderson, Erica Bass, and Lester Diggs) were lying when they said that he participated.

"The law is quite clear that 'in order to vacate the judgment and sentence on [grounds of perjured testimony], two elements must be established: first, the use of perjured testimony, and second, knowledge by the prosecuting officials at the time the testimony was used that it was perjured.'" *Lindhorst v. United States*, 658 F.2d 598, 601 (8th Cir. 1981) (quoting *United States v. Conzemius*, 611 F.2d 695, 697 (8th Cir. 1979) (emphasis omitted)). Petitioner cannot meet this burden because he has not demonstrated that the testimony of Mr. Anderson, Ms. Bass, and Mr. Diggs offered by the Government was actually perjured. Despite his argument to the contrary, Petitioner's business records do not definitively establish that he did not or could not travel on the drug trips in question. This is the only evidence Petitioner offers to disprove the testimony of the Government's witnesses against him regarding his presence on the drug trips and this evidence is insufficient to prove that the testimony was perjured.

Petitioner also discusses the testimony of Mr. Anderson with respect to Ray Tolliver's participation in the June or July 1997 drug trips at issue in this case.³ Petitioner states that Mr. Tolliver was incarcerated at this time and could not have participated in the trips, thus, Mr. Anderson's testimony was perjured. Even assuming that it is true that Mr. Tolliver was incarcerated during the relevant time period, the Court finds that the testimony was not perjured because Mr. Tolliver's participation in the drug trips was not material to Petitioner's conviction. *See Johnson v. United States*, 520 U.S. 461, 465 (1997) ("there is no doubt that materiality is an element of perjury").

Because the Court finds that the testimony was not perjured, Petitioner's ground for relief on the basis of perjured testimony can be denied without further analysis.

### D. VALIDITY OF INDICTMENT

Finally, Petitioner also asserts that he is entitled to relief under 28 U.S.C. § 2255 because he was indicted with a false and invalid indictment, based on misleading and false information. Specifically, Petitioner points to a statement that was made by Jason Miller to FBI agents and that was relayed to the Grand Jury through the testimony of Special Agent Lopez. At trial, Mr. Miller's testimony was inconsistent with the statement he had made to FBI agents. Petitioner asserts that his indictment was invalid because the Grand Jury was presented with inaccurate information.

Petitioner's claim for relief based on validity of the indictment must fail. "Except in cases involving racial discrimination in the composition of the grand jury, a guilty verdict by the petit

---

³It appears that Petitioner offered this evidence to support his claim that the Government was aware that its witnesses were lying, and not as evidence of perjured testimony. However, for the sake of being thorough, the Court will address whether this testimony was perjured.

jury excuses errors at the grand jury level that are 'connected with the charging decision . . . .'" *United States v. Hintzman*, 806 F.2d 840, 843 (8th Cir. 1986) (quoting *United States v. Mechanik*, 475 U.S. 66, 70 (1986)). Because Petitioner was found guilty by the petit jury in his case, any error that occurred in the Grand Jury proceedings is excused.

## IV. CERTIFICATE OF APPEALABILITY

The Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can be issued. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court shall not issue a certificate of appealability as to any claims raised in Petitioner's § 2255 Motion.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Carl Alexander's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1] is **DENIED**.

Dated this <u>20th</u> Day of <u>May</u>, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE